BILLY J. WILLIAMS, OSB #901366
Acting United States Attorney
District of Oregon
FRANK R. PAPAGNI, JR., OSB #762788
Assistant United States Attorney
frank.papagni@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone:   (541) 465-6771
Facsimile:    (541) 465-6917
Attorneys for the United States

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA | Case Nos. 6:11-CR-60062-AA |
| | 6:13-CR-00135-AA |
| v. | 6:13-CR-00545-AA |
| | 3:97-CR-00014-AA |
| THOMAS WILLIAM CORNELIUS, JR., | |
| Defendant. | **UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING AND SUPPLEMENTAL SENTENCING MEMORANDUMS (ECF 246 & 247)** |

Billy J. Williams, Acting United States Attorney for the District of Oregon,

and Frank R. Papagni, Jr., Assistant United States Attorney, respectfully responds

to Defendant's Sentencing Memorandum (ECF 246) and Supplemental Sentencing

Memorandum (ECF 247).   Defendant makes various objections to the Presentence

Report and contends that after *Johnson v. United* States, 135 S.Ct. 2551 (June 26,

2015), his prior Oregon convictions for burglarizing dwellings are no longer "generic

UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING AND
SUPPLEMENTAL SENTENCING MEMORANDUMS (ECF 246 & 247)      Page 1

burglaries" and therefore, not "violent felony offenses" under the Armed Career

Criminal Act (ACCA).    18 U.S.C. § 924(e)(2)(B)(ii).

## Response to Defendant's Sentencing Memorandum

**1.    Sentencing for Seven Separate Felon in Possession of Firearm(s) Offenses in Case No. 6:11-CR-60062-AA**

**Count 17 "Merges" with Counts 11 and 13**

Defendant was found guilty of Counts 11, 13 and 17.    Count 11 charges

defendant with possessing a Taurus .25 caliber pistol on February 23, 2011, and

Count 13 charges him with possessing an Izhmash .380 caliber pistol on March 22,

2011.    Count 17 charges him with possessing both pistols on May 3, 2011.

Accomplice testimony established that his actual possession of these pistols was not

continuous.

Nevertheless, his constructive possession of them constituted a "course of

conduct," not separate criminal acts.    *United States v. Thornton*, 23 F.3d 1532, 1534

(9th Cir. 1994) (continuous possession of the shotgun from the time of the murder

until arrest); *United States v. Horodner*, 993 F.2d 191, 193 (9th Cir. 1993)(possession

is a "course of conduct, not an act")(citing *United States v. Jones*, 533 F.2d 1387, 1391

(6th Cir. 1976).

Because the jury explicitly found Defendant stole and possessed different

pistols on different dates, he can be sentenced and convicted on Counts 11 and 13.

But, because he retained actual or constructive possession of the pistols until their

seizure in his car's trunk on May 3, 2011, he cannot be sentenced on Count 17, and it must "merge" into Counts 11 and 13.   *North Carolina v. Pearce*, 395 U.S. 171, 717 (1969) (the double jeopardy clause prohibits imposing "multiple punishments for the same offense"); *see also Ball v. United States*, 470 U.S. 856, 865 (1985)(improper to impose concurrent sentences on duplicative convictions).   Accordingly, the judgment should state that "Count 17 was merged for sentencing purposes into Counts 11 and 13."

Defendant incorrectly contends Count 17 must be "dismissed."   He cites no supporting case authority; however, there is authority supporting "merging" the counts.

In *United States v. Cunningham*, 145 F.3d 1385, 1398-99 (D.C. Cir. 1998), defendant was convicted of eight counts of being a felon in possession of a firearm. The court found that "[w]hen a felon possesses multiple weapons, only one offense is committed, unless the weapons are stored or acquired at different times or places." *Id.* at 1398; *see also United States v. Szalkiewicz*, 944 F.2d 653, 654 (9th Cir. 1991). Because the eight § 922(g) charges were not separated by date, acquisition and location, the District of Columbia Circuit ordered "these convictions must **merge into one**." (Boldness supplied).

In *United States v. Richardson*, 439 F.3d 421, 423 (8th Cir. 2006)(*en banc)*, defendant was charged in separate counts with being a felon in possession of a firearm and being a drug user in possession of the same firearm on the same date.

Sentenced on each count, defendant appealed contending the counts "should have been merged at sentencing into a single offense."   The Eighth Circuit agreed to "**merge the counts of conviction into one count**," and ordered defendant be sentenced on a single § 922(g) conviction.

Likewise in *United States v. Shorter,* 328 F.3d 167, 173 (4th Cir. 2003), defendant was found guilty of being a felon and a drug user in possession of two firearms on the same date at the same location.   The Fourth Circuit held that the sentencing court properly merged offenses, rather than acquitting defendant of one of the two counts.

**2.**    **Superseding Indictment Alleged Armed Career Criminal Act (ACCA) Sentencing Enhancement**

Counts 1, 3, 5, 7, 9, 11, 13, 15 and 17 of the Superseding Indictment, identified six convictions which qualified as violent felonies under the ACCA.   The Superseding Indictment's heading and the foot of each count referred to the ACC statute, i.e., 18 U.S.C. § 924(e).   And, the seventh conviction, for being a felon in possession, referred to his being an "Armed Career Criminal."   Accordingly, Defendant's claim that "the government did not allege that (his) prior convictions were violent felonies that would subject him to the ACCA" and therefore violate his "Fifth Amendment rights of Due Process and grand jury indictment" has no factual or legal traction.

3.    **Jury Not Required to Find Defendant is an Armed Career Criminal**

Defendant acknowledges his argument that a jury must find he is an armed career criminal is contrary to controlling case authority.   *Apprendi v. New Jersey*, 530 U.S. 466, 489-90 (2000); *Almendarez-Torres v. United States*, 523 U.S. 224 (1998).

4.    **The Supreme Court's Holding in *Johnson v. United States***

The Supreme Court in *Johnson* held that the residual clause of the ACCA was unconstitutionally vague.   The residual clause defined a "violent felony" as an offense that "involves conduct that presents a serious potential risk of physical injury to another."   18 U.S.C. § 924(e)(2)(B)(ii).   By finding that the residual clause's vagueness violated the Fifth Amendment's Due Process guarantee, the Court overruled its decisions in *James v. United States*, 550 U.S. 192 (2007), and *Sykes v. United States*, 564 U.S. 1 (2011), and held that the clause is void "in all its applications."   135 S.Ct. at 2561.

The *Johnson* Court did not strike other provisions in the ACCA, including the "four enumerated offenses" that precede the residual clause, 18 U.S.C. § 924(e)(2)(B)(ii), "or the 'element's' clause of the Act's definition of a violent felony." 135 S.Ct. at 2563 (the Court's holding "does not call into question application of the [ACCA] to * * * the remainder of the Act's definition of a violent felony, . . ..").   Nor did the Court's holding affect the ACCA definition of "serious drug offense."   18 U.S.C. § 924(e)(2)(A).   *Id.*

A violent felony under the "elements" clause "has as an element the use, or attempted use, or threatened use of physical force against the person of another." The "enumerated offenses" listed in the ACCA are "burglary, arson, or extortion, [or] involves the use of explosives."

**5.    Defendant's Convictions Qualify as Violent Felonies, and Again, Defendant Deserves an Armed Career Criminal Sentence**

    **a.    Application of the ACCA's Enumerated Offense and Elements Clauses**

Defendant correctly submits that the *Johnson* holding prevents his burglaries of dwellings from qualifying as "violent felonies" under the ACCA "residual clause." Case No. 6:11-CR-60062-AA, ECF 247 at 2.   But, as detailed in the government's Supplemental Sentencing Memorandum filed on July 1, 2015, Oregon burglary convictions also qualify as violent felonies under the ACCA's "enumerated offenses" clause because the elements of Oregon's burglary statutes "categorically" match the elements of "generic" burglary as defined in *Taylor v. United States*, 495 U.S. 575, 598 (1990).   ECF 245.

Oregon's statute which defines "building," while "overbroad," is "divisible" and, using the "modified categorical approach," judicial documents establish that Defendant's convictions were for "generic" burglaries.

Accordingly, as justified in the government's Sentencing Memorandum of June 18, 2015, Defendant's violent criminal career warrants the imposition of eight concurrent life sentences.   ECF 243.

**b.    Felon in Possession of Firearm(s) Guidelines**

If Defendant's Oregon convictions for burglarizing dwellings do not qualify as ACCA violent felonies, then he has only two qualifying convictions (robbery and escape) and the maximum term of imprisonment for each conviction would be ten years.   18 U.S.C. § 922(g)(1).   This Court would then need to determine the guideline calculations under U.S.S.G. § 2K2.1( (Unlawful Possession of Firearms) as opposed to U.S.S.G. § 4B1.4 (Armed Career Criminal).   *Gall v. United States*, 552 U.S. 38, 49 (2007)(courts are required to "begin all sentencing proceedings by correctly calculating the applicable Guideline range" and to use the guidelines as "the starting point and the initial benchmark" for sentencing).

If Defendant's burglary convictions do not qualify as "violent felonies" under the ACCA, then they also would not qualify as "crimes of violence" under the firearms guideline (or the career offender guideline).   *Peugh v. United States*, 133 S.Ct. 2072, 2083 (2013)(sentencing guidelines are also subject to vagueness challenges).

**c.    Advisory Sentencing Guidelines**

Defendant correctly predicts his base offense level is only 20 because his other violent felony conviction, i.e., escape in the second degree, is outside the applicable time period.   PSR ¶ 105; U.S.S.G. § 2K2.1(4)(A); U.S.S.G. §§ 4A1.2(e)(1) and (2). The escape conviction cannot be considered because it became stale while Defendant served his sentences for robbery in the first degree, assault in the second degree and being an armed career criminal.   PSR ¶¶ 105, 108, 109.

### d.    Number of Firearms Stolen During Residential Burglaries

Defendant acknowledges his offense level must be increased by 10 levels because of the number of guns he stole while committing burglaries.   PSR ¶¶ 56-58.

### e.    Group One Adjusted Offense Level — 30

The government agrees with Defendant and the PSR writer that his adjusted offense level for seven Felon in Possession of Firearm offenses should be 30.

### 6.    Sentencing for Assault with a Dangerous Weapon with Intent to Commit Bodily Harm and Being an Inmate in Possession of Prohibited Objects in Case No. 6:13-CR-00135-AA

### a.    Merger of Count 3 into Count 2

For the reasons previously stated, Count 3, the Class D Felony of Inmate in Possession of Prohibited Objects for purposes of sentencing, merges into Count 2, i.e., the Class C Felony of Assault with a Dangerous Weapon with Intent to Commit Bodily Harm.   *See United States v. Szalkiewicz*, 944 F.2d 653, 654 (9th Cir. 1991).

### b.    Advisory Sentencing Guidelines

For these crimes, Defendant agrees his base offense level of 14 is increased by six levels because more than minimal planning went into his obtaining dangerous weapons to use when ambushing his victim in the detention center.   PSR ¶¶ 29-30, 63-65.

### c.    Serious Bodily Injury, not Life-threatening

The government agrees with Defendant that trial testimony established that injuries to victim RM's head and abdomen were "serious" but not life-threatening,

UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING AND SUPPLEMENTAL SENTENCING MEMORANDUMS (ECF 246 & 247)    Page 8

and his offense level should be increased by five levels as opposed to six levels as recommended by the PSR writer.[1]    PSR ¶ 66; U.S.S.G. § 2A2.2(b)(3)(B) and (C).

Of course, as clearly depicted on the video played for the jury, RM's actual injuries were not the ones Defendant was hoping and attempting to inflict.    PSR ¶ 30 ("The defendant told RM his motive for the attack was because RM was a 'fucking rat,' and that he intended to 'kill' RM.").

### d.    Vulnerable Victim

The government disagrees with Defendant that RM was not a "vulnerable victim" as defined under U.S.S.G. § 3A1.1, App. Note 2, and that his offense level should not be increased two levels under U.S.S.G. § 3A1.1(b)(1).

Defendant argues ". . . there was nothing about RM's status as an incarcerated person that, *by itself*, prevented him from fending off Defendant's attack.    ECF 74 at 13 (italic supplied).    But this argument ignores that RM's status was substantially different than a typical incarcerated person.

RM was particularly vulnerable by virtue of his incarceration and inability to escape from the Defendant who targeted RM for being a "fucking rat."    PSR ¶ 30. Specifically, RM possessed "unique characteristics" which made him more vulnerable or susceptible to assault than a "typical victim (inmate)."    *United States v. Tapia*, 59 F.3d 1137, 1143 (11th Cir. 1995)(court correctly imposed vulnerability enhancement

---

[1] "'Serious bodily injury' means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, . . ., or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 App. Note 1 (L).

UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING AND SUPPLEMENTAL SENTENCING MEMORANDUMS (ECF 246 & 247)    Page 9

after finding that (the victim), as an individual, was particularly vulnerable by virtue of his incarceration with (defendants) and his inability to escape, and that (victim) was targeted because of this vulnerability).

Certainly this Defendant must concede that an inmate faces a risk of serious bodily injury if labeled a snitch in a high-risk environment, and is "otherwise particularly susceptible" to being assaulted.   U.S.S.G. § 3A1.1, App. Note 2; *see United States v. Doe*, 778 F.3d 814, 817 n1 (9th Cir. 2015)("defendant may face 'a risk of serious bodily harm if his role on behalf of the Government were disclosed to other inmates.'"), *quoting United States v. Doe*, 655 F.2d 920, 922 n1 (9th Cir. 1980).   And, his concession justifies application of the vulnerable victim increase.

### e.    Group Two Adjusted Offense Level -- 27

Defendant's adjusted offense level for assaulting RM with a dangerous weapon with intent to commit bodily harm is 27.

### 7.    Sentencing for Assault with a Dangerous Weapon with Intent to Commit Murder, Assault with a Dangerous Weapon with Intent to Commit Bodily Harm and Being an Inmate in Possession of Prohibited Objects in Case No. 6:13-cr-00545-AA

### a.    Merger of Counts 2 and 3 into Count 1

For the reasons previously stated, Count 2, i.e., the Class C Felony of Assault with a Dangerous Weapon with Intent to Commit Bodily Harm, and Count 3, i.e., the Class D Felony of Inmate in Possession of Prohibited Objects, for purposes of sentencing, merge into Count 1, i.e., the Class C Felony of Assault with a Dangerous

Weapon with Intent to Commit Murder.   *See United States v. Szalkiewicz*, 944 F.2d 653, 654 (9th Cir. 1991).

### b.    Advisory Sentencing Guidelines

For these crimes, Defendant agreed with the PSR writer that his base offense level is 27.   The government, PSR writer and Defendant agree that because he used a razor blade to cut the throat of his handcuffed victim, his offense level should be increased by two under the vulnerable victim guideline.   U.S.S.G. § 3A1.1(b)(1); PSR ¶¶ 36-49, 71, 73.

The government disagrees with Defendant and the PSR writer that his base offense level is 27.

### c.    Object of the Offense was First Degree Murder – Level 33

Defendant's base offense level is 33 because the object of his assault, the intent of his assault, was to commit first degree murder.   U.S.S.G. § 2A2.1(a)(1).   First degree murder is "the unlawful killing of a human being with malice aforethought." 18 U.S.C. § 1111.

Defendant covertly obtained a razor blade and selected an area where correctional officers could not prevent the assault or quickly rescue his intended victim.   He waited more than 24 hours to commit the crime.   He secreted the razor blade on his person, ensured he was out of his restraints while his victim remained handcuffed, then commenced to beat the victim and cut the victim's throat with the

razor blade.    Together, these acts clearly constituted a "willful, deliberate, malicious and premeditated" attempt to kill KWS.    18 U.S.C. § 1111; PSR ¶¶ 36-41, 45.

The "object" of the assault was first degree murder.    This was made clear when Defendant stated that he could not believe he missed the victim's jugular vein and hoped his victim did not have any communicable disease because Defendant wanted to die by lethal injection.    PSR ¶ 45.    (Defendant's statement was heard by a correctional officer and staff psychologist); 18 U.S.C. § 1111(b)("Whoever is guilty of murder in the first degree shall be punished by death . . ..;" whereas, "[w]hoever is guilty of murder in the second degree, shall be imprisoned for any term of years or for life.")

Any doubt about the object of the assault was removed when, after being advised of his rights, Defendant told FBI Agent Austin on August 19, 2013:

**"I'm at war with the world and anybody who gets in my way."**

RT 7/9/15 at pp. 184-86, 189-90 (boldness added).

Agent Austin asked what the point of his assault was, and if he was trying to make a statement or if he was actually trying to kill KWS.    Defendant replied:

**"I want the death penalty.    Of course I was trying to kill him. That wasn't about no making a statement when you cut a guy's throat."**

*Id.* at p. 190 (boldness added).

### d.  Degree of Bodily Injury is Between Life-threatening and Serious

The government agrees with Defendant that trial testimony did not establish that victim KWS sustained a life-threatening bodily injury.   PSR ¶ 49; U.S.S.G. § 1B1.1 App. Note 1 (J)(". . . an injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, . . . that is likely to be permanent; . . .").

However, the question is a close one because, as depicted in the video and affirmed by testimony, there was a substantial risk KWS would have bled to death had Defendant been able to further delay the correctional officers' efforts to remove KWS from the exercise cage.   PSR ¶¶ 41-43.   This fact lends support to the PSR writer's finding that KWS's bodily injury was "life-threatening."   *See* RT 7/8/15 at p. 94 (EMT Olson answer to Mr. Kolego's question:   "I would have to say yes, there were life-threatening injuries.")

The government disagrees with the PSR writer's finding that KWS' injury was life-threatening and Defendant's assertion it was a "serious bodily injury."   U.S.S.G. § 2A2.1(b)(1)(B).   For cases such as this one, the guidelines provide a "middle ground" when the degree of injury is between life-threatening and serious, and the government submits a three-level increase is appropriate pursuant to U.S.S.G. § 2A2.1(a)(b)(1)(C).

e.    **Group Three Adjusted Offense Level — 38**

With a base offense level of 33, an increase of two levels for assaulting a vulnerable victim, and three additional levels for bodily injury, Defendant's adjusted offense level for assault with a dangerous weapon with intent to commit murder is 38.

8.    **Government's Guidelines Calculations**

a.    **Multiple Count Adjustment**

The government and Defendant agree the adjusted offense level for Group 1 (felon in possession counts) is **30**.

The government submits the adjusted offense level for Group 2 (assault with intent to commit bodily injury) is **27**.    Defendant submits it is 25.

The government submits the adjusted offense level for Group 3 (assault with intent to commit murder) is **38**.    Defendant contends it is 31.

Under the government's sentencing guideline calculations, the highest level, Group 3, equals one additional multiple count point.    U.S.S.G. § 3D1.4(a).    The next level, Group 1, adds .5 multiple count point.    U.S.S.G. § 3D1.4(b).    The last level, Group 2, does not add any multiple count points.    U.S.S.G. § 3D1.4(c).    The total multiple count points or units is 1.5.    Pursuant to U.S.S.G. § 3D1.4, one level is added to Defendant's highest adjusted offense level (38), resulting in a Total Offense Level of **39**.

### b.    Career Offender Provision - U.S.S.G. § 4B1.1

There is no need for the Court to rule on whether Defendant is a career

offender because even he calculates his combined adjusted offense level to be equal to

the career offender offense level of 34.    ECF 74 at 20; *see also* PSR ¶ 89.

### c.    Criminal History VI

Defendant and the government agree with the PSR writer that his Criminal

History Category is VI for the felon in possession offenses (Group 1).    PSR ¶ 112

(criminal history score of 18).

However, Defendant calculates his Criminal History Category is IV for the

assault convictions because his first degree burglary and two second degree escape

convictions became too old to be counted as criminal history points.    U.S.S.G. §

4A1.2(e); PSR ¶¶ 104, 106 and 107.    Referring to an Oregon Department of

Corrections record, the PSR writer used the termination date and counted the first

degree burglary.    PSR ¶¶ 104, 106, 107.

If Defendant is correct, these three convictions along with nine other

adult felony convictions were not used in computing his criminal history category

because they aged while Defendant was imprisoned.    U.S.S.G. § 4A1.2(e).

However, Defendant opts to simply ignore all of these convictions when

calculating his Criminal History, adjusted offense level and when asking to be

sentenced at the low end of what he predicts will be his guidelines range.

### d.    Upward Departure of Sentencing at or Toward the High End of Range

"If the court finds that a sentence(s) imposed outside this time period is evidence of similar, or serious dissimilar, criminal conduct, <u>the court may consider this information in determining whether an upward departure is warranted</u> under § 4A1.3 (Adequacy of Criminal History Category)."    U.S.S.G. § 4A1.2, Application Note 8 (underscore supplied).    Pursuant to U.S.S.G. § 4A1.2, App. Note 8, an upward departure under U.S.S.G. § § 4A1.3(a)(1) and 4A1.3(a)(2)(A), is appropriate.

If the Court finds his Criminal History category is IV for his assaults, it may depart upward to a VI since that criminal history category substantially underrepresents the seriousness of his criminal history, or the likelihood that he will commit other crimes.    U.S.S.G. § 4A1.3(a)(1).

If the Court finds Defendant has a Criminal History VI for his assaults, then U.S.S.G. § 4A1.3(a)(4)(B) permits this Court to move his offense level higher until finding the appropriate guideline range so long as it does not exceed the statutory maximum(s).

The maximum sentence for seven separate felon in possession offenses, if ordered to be served consecutively, is 70 years.    The maximum sentence for assault with a dangerous weapon with intent to commit bodily injury is 10 years, and assault with a dangerous weapon with intent to commit murder is 20 years.    If served consecutively, the statutory maximum term of imprisonment for these crimes would

be 100 years.   18 U.S.C. §§ 922(g)(1), 113(a)(3), 113(a)(1); 18 U.S.C. § 3584 (Concurrent or Consecutive Sentences).

To account for Defendant's dozen unaccounted for felony convictions, the government requests the Court consider increasing Defendant's criminal history category or adjusted offense level, or impose a sentence at or toward the high end of what it finds to be Defendant's sentencing guideline range.

### e.    Sentencing Guideline Range

The government submits Defendant's combined adjusted offense level which is also his total offense level is **39**.   It finds Defendant's Criminal History Category to be **VI**, and his advisory sentencing guideline range to be **360 months to life**.

### f.    Upward Variance

Should the Court find Defendant's advisory sentencing guideline range is less than 360 months to life, the government submits an upward variance is also warranted based on the factors in 18 U.S.C. § 3553(a).

As described in the government's two previous sentencing memorandums, justification for an upward variance can be found in the nature and circumstances in each crime which jurors found him guilty of committing, coupled with the fact that many of these crimes were similar to the crime he had just been released from federal prison for committing -- that is -- being a felon in possession of a loaded firearm while committing a violent felony (burglary/robbery).

UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING AND SUPPLEMENTAL SENTENCING MEMORANDUMS (ECF 246 & 247)    Page 17

An additional consideration left unaddressed by the parties, was Defendant's taking two other inmates hostage (JH and CE) after having assaulted KWS.   RT 7/9/14 at p. 202 (By Mr. Kolego:   Q:   What exactly did Mr. Cornelius say?   Lt. Rodrigues:   A:   I am taking these inmates hostage.)

### g.    18 U.S.C. § 3553 Factors

The government's first sentencing pleadings contain a discussion of the factors this Court must consider when imposing a sufficient but not greater than necessary sentence.   ECF 243.

### 9.    Response to Defendant's Other Comments to PSR and Government's Memorandum

18 U.S.C. § 3661 provides that "[n]o limit shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for purposes of imposing an appropriate sentence."   Accordingly, comments in the PSR and government's sentencing pleadings can be received and considered.

The Court can give whatever weight, if any, to information supplied by the PSR writers in 1997 and 2015, and by the government, about Defendant's 1979 Manslaughter, 1988 Burglary, 1984 Assault, and 1984 Unauthorized Use of a Motor Vehicle convictions.   PSR ¶¶ 96, 97, 100 and 116.   It can also consider Defendant's credibility when evaluating his denials and disagreements.

What cannot be denied is that Defendant shot and killed a person, committed a residential burglary in which his accomplice was shot and killed by police, his girlfriend and her friend alleged he assaulted them, and, when being arrested for unauthorized use of a motor vehicle, police received information that he allegedly claimed to have shot someone in a "southern Oregon town."

### a.    Assault on RM

Without disclosing his motive, Defendant denies his assault of RM was because he had snitched on him.   ECF at 19.   RM testified that while being assaulted, Defendant several times said:   "I'm going to kill you, you fucking rat." Correctional Officer Prock testified that he heard Defendant yell at RM and call him a snitch, rat, and pussy.   RM also testified Defendant was "unhappy" about his distribution of food.

### b.    Assault on KWS

Defendant correctly points out that the government misstated that KWS' trachea was cut open.   EMT Olson testified that he found three lacerations on KWS' neck with the deepest one over the trachea.   RT 7/8/15 at pp. 88-89.   That laceration was two inches long, a half-inch wide and a quarter-inch deep and it exposed the white of the trachea.   *Id.* at 88-80, 93.

Mr. Kolego asked EMT Olson if based on his "objective observations, were there any life-threatening injuries?"   *Id.* at 94.   EMT Olson answered:   "I would have to say yes, there were life-threatening injuries."   *Id.*

UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING AND
SUPPLEMENTAL SENTENCING MEMORANDUMS (ECF 246 & 247)    Page 19

On August 19, 2013, Defendant told FBI Agent Austin the motive for the assault was that KWS had failed to mail his letter to a female friend.   However, Defendant wrote in a March 27, 2014 letter to that female that ". . . even his own homeboys put a green light out on him . . ..   **I guess I wasn't the first person he told on** . . . what's he got against you anyway."   RT 7/9/15 at p. 241 (Boldness supplied).

The fact that he called RM a "rat" and wrote that KWS had "told on" him are reasons to conclude Defendant assaulted his victims because he thought they were informants.

**10.    Supervised Release Violation Sentence**

The government agrees with Supervisory U.S. Probation Officer Glover that Defendant "**needs to be incarcerated for as long as possible**" because Defendant "had only been on supervision for nine months before he committed" the crimes for which he is to be sentenced.   7/7/15 Amended Supervise Release Violation Recommendation (boldness supplied).   Therefore, the government concurs with his recommendation that Defendant's term of supervised release be revoked and he be committed to the custody of the Bureau of Prisons for a period of 60 months (five years), the statutory maximum, to run consecutively to the sentences imposed in 6-11-CR-60062-AA; 13-CR-00135-AA, and 13-CR-00545-AA, with no re-imposed term of supervise release to follow.   *Id.*

## Government's Sentence Recommendation

If Defendant qualifies to be sentenced as an Armed Career Criminal, the government and the U.S. Probation Office recommend a sentence of life imprisonment.   ECF 243 at 30.

If he does not, mindful that the U.S. Probation Office's recommendation in 1997 that he receive a 327-month term of imprisonment did not deter him from violating the terms of his supervised release by committing these crimes, the government recommends the following:

Concurrent 10-year prison terms for Counts 1, 3, 5 and 7 in 6:11-CR-60062-AA.   This breaks down to 30-month prison terms for each of these counts of conviction.

Concurrent 10-year prison terms for Counts 9, 11 and 13 to be served consecutively to Counts 1, 3, 5, and 7 in 6:11-CR-60062-AA.   This is the equivalent of 40-month prison terms for each of these counts of conviction which were committed after the crimes in Counts 1, 3, 5 and 7.   Count 17 merges into Counts 11 and 13.

A five-year prison term for Count 2 in 6:13-CR-00135-AA, to be served consecutively to the sentence imposed in 6:11-CR-60062-AA.   Count 3 merges into Count 2.   This sentence reflects the degree of the victim's injury and takes into consideration the jury's acquittal on Count 1.

A 20-year prison term for Count 1 in 6:13-CR-00545-AA, to be served consecutively to the sentences imposed in 6:11-CR-60062-AA.   Counts 2 and 3 merge

into Count 1.   This sentence accounts for Defendant's continued and escalating violent criminal conduct.

A five-year prison term for violating the terms of his supervised release in 3:97-CR-00014-AA to be served consecutively to the sentences imposed in 6-11-CR-60062-AA; 13-CR-00135-AA, and 13-CR-00545-AA.   This sentence fully accounts for Defendant's failure to be deterred from continuing to commit crimes involving firearms and violence.

A 50-year prison term is not greater than necessary considering the nature and circumstances of Defendant's numerous crimes and his extensive criminal history and sociopathic characteristics.   It reflects the seriousness of his offenses and their impact on his victims.   It will promote respect for the law and provide just punishment.   It will afford adequate deterrence to criminal conduct by Defendant and like-minded criminals.   Lastly, it will ensure that the public will be protected from any further crimes by the Defendant.   While imprisoned, Defendant will receive medical care and other correctional treatment, and be provided educational and vocational opportunities.

Respectfully submitted this 24th day of August 2015.

BILLY J. WILLIAMS
Acting United States Attorney


/s/ *Frank R. Papagni, Jr.*
FRANK R. PAPAGNI, JR.
Assistant U.S. Attorney


UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING AND
SUPPLEMENTAL SENTENCING MEMORANDUMS (ECF 246 & 247)    Page 22